**MAURY–COLE CO. v. LOCKHART GRO-CERY CO. (No. 5424.)**

(Court of Civil Appeals of Texas. Austin. Jan. 20, 1915.)

1. COMMERCE ⬡⟷40—"INTERSTATE COMMERCE" —WHAT CONSTITUTES.

Where a foreign corporation sold direct to defendants, a local firm, a large consignment of coffee, and, in compliance with its agreement, sent a special agent into the state to solicit orders which were to be turned over to defendants, the transaction constituted interstate, in contradistinction to intrastate, commerce, and the corporation's right of action to recover the purchase price of the coffee could not be defeated because it had not complied with Vernon's Sayles' Ann. Civ. St. 1914, arts. 1314–1318, requiring foreign corporations to obtain a permit to do business in the state before they can maintain an action for the price of goods sold to customers.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. §§ 29, 30; Dec. Dig. ⬡⟷40.

For other definitions, see Words and Phrases, First and Second Series, Interstate Commerce.]

2. SET-OFF AND COUNTERCLAIM ⬡⟷ 29—SUBJECT-MATTER OF SET-OFF.

Vernon's Sayles' Ann. Civ. St. 1914, art. 1329, provides that, if plaintiff's claim be founded on a certain demand, defendant may not set off unliquidated or uncertain damages founded on a tort or breach of covenant on the part of plaintiff, while article 1330 provides that the preceding article shall not prohibit defendant from pleading in set-off any counterclaim founded on a cause of action arising out of or incident to plaintiff's cause of action. Plaintiff sold defendants two consignments of coffee under an agreement that it should send a special agent to assist defendants in disposing of the coffee. Held that, in an action for the purchase price of the last consignment, defendants might counterclaim for plaintiff's breach of the covenant with respect to the special agent.

[Ed. Note.—For other cases, see Set-Off and Counterclaim, Cent. Dig. §§ 49–51; Dec. Dig. ⬡⟷29.]

Appeal from Travis County Court; Wm. Von Rosenberg, Judge.

Action by the Maury-Cole Company, a corporation, against the Lockhart Grocery Company, a partnership. From a judgment for defendants, plaintiff appeals. Reversed and remanded.

Hart & Woodward, of Austin, for appellant. Fiset, McClendon & Shelley, of Austin, for appellees.

RICE, J. Since appellant's statement of the nature and result of this suit is concurred in by appellees, we adopt the same in part. It shows that appellant, a private corporation, chartered under the laws of the state of Tennessee, with its principal office in the city of Memphis, brought this suit in the county court of Caldwell county against the Lockhart Grocery Company, a partnership alleged to consist of Ike Heidenheimer, L. Strassburger, and Mose Heidenheimer, for $264.15, and interest, alleged to be the purchase price due from appellees for certain coffee purchased by them from appellant under written contract dated August 24, 1912.

Upon pleas filed by appellees the suit was dismissed as to Mose Heidenheimer, and transferred to the county court of Travis county, the domicile of the remaining appellees, who answered by general demurrer and admission of the plaintiff's allegations as to the account sued on, and the amount thereof, but denied liability therefor on the ground that the transaction out of which the debt arose constituted intrastate commerce, in which plaintiff was engaged without a permit, as required by the law pertaining to foreign corporations. Appellees further answered by way of cross-action, pleading that prior to the purchase in question appellant had entered into a contract with them, by which it had agreed to furnish, at its own expense, a specialty man, to aid their drummers in making sales to appellees' customers within the jobbing territory allotted to them adjacent to the cities of Austin, Lockhart, and Gonzales of all goods purchased by them of it; that under said contract they further pleaded that appellant agreed that such specialty man would turn over all orders so taken in said territory to them to be filled by them out of stock purchased from it, and would not turn in any of said orders direct to appellant, and that such specialty man should use his best efforts to sell all of the goods purchased by them from appellant; that on or about the —— day of June, 1912, in pursuance of such contract, they purchased a car of coffee from appellant, but that appellant failed to carry out such contract, and violated the same, in that said specialty man, one Saunders, did not use his best efforts to dispose of such coffee, but made various sales of coffee to appellees' best customers within said territory, and returned said orders direct to appellant, who filled the same; that, if appellant had complied with its contract in this respect, said specialty man could and would have sold all of said coffee within a reasonable time prior to the 1st of September, 1912, but, on account of such failure, they had left on hand a large quantity thereof, which they have been compelled to sell at a loss of $700, for which they sought recovery against appellant.

Appellant filed its first supplemental petition, consisting of general and special exceptions to the pleadings of appellees, but these were all overruled after appellees had filed their first trial amendment. Appellant also denied the allegations of appellees' cross-action. A trial before the court without a jury resulted in a judgment that appellant take nothing by its suit, and that appellees recover of the appellant the sum of $619.47 upon their cross-action, from which judgment this appeal is prosecuted.

While various questions are presented for our consideration by appellant under the several assignments in its brief, still there are only three which we deem it necessary to

---

⬡⟷For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

pass upon: First, whether or not appellant was entitled to maintain this suit; second, whether appellees' cross-action can be off-set against appellant's demand; and, third, whether the evidence supports the court's judgment and finding as to the amount for which it awarded appellees damages upon their cross-action.

The evidence, we think, establishes the fact that prior to the transactions which furnish the basis of appellant's suit and appellees' cross-action appellant and appellees had entered into a contract by which the former agreed to furnish at its own expense a specialty man, who would use his best efforts to aid appellees' drummers in selling all coffees purchased by them from it; that the 15 bags of coffee for the price of which this suit was brought were sold direct by appellant to appellees on their order therefor; that in June, prior to such purchase, appellees had ordered a car of coffee from appellant; that, in pursuance of said agreement, appellant did furnish a specialty man to aid appellees in the sale and disposition thereof in their trade territory. It is claimed by appellees, however, that said specialty man did not use his best efforts to sell said coffee, and that during the time he was so engaged he violated said contract by taking orders for appellant from many of appellees' best customers, which he failed to send to appellees, but, instead, sent them direct to appellant, who filled same. The fact that he did this, however, and that he failed to use his best efforts to aid appellees in the sale of said coffee, is disputed on the part of appellant, which controversy we do not undertake to pass upon.

[1] Both the August and June shipments of coffee were sold by appellants direct to appellees upon their order therefor. Notwithstanding the fact that appellant's said agent, Saunders, in accordance with the agreement, did make various sales of coffee while aiding appellees' drummers in selling the respective shipments of coffee purchased by appellees from appellant, and that these sales were made within the state of Texas, still, most of the orders therefor were returned to and filed with appellees, who furnished the coffee to customers out of their stock. These, in our judgment, did not constitute intrastate transactions within the contemplation of articles 1314, 1315, 1316, 1317, and 1318 of chapter 26, Vernon's Sayles' Texas Civ. Stats. of 1914, requiring foreign corporations desiring to transact business in Texas to file their application with the secretary of state and obtain a permit to do business within this state before they could maintain an action for the price of goods sold to customers within this state. A sale of goods by a foreign corporation to parties within this state, notwithstanding the orders may be taken direct through the instrumentality of their drummers traveling in this state, constitutes interstate commerce, and is not subject to the reg-ulations prescribed by the foregoing articles of said chapter. See Miller v. Goodman, 91 Tex. 41, 40 S. W. 718; Erwin v. Dupont, 156 S. W. 1097; Leschen v. Moser, 159 S. W. 1019, 1025; Harrell v. Peters Co., 36 Okl. 684, 129 Pac. 872, 44 L. R. A. (N. S.) 1094; Saxony Mills v. Wagner, 94 Miss. 233, 47 South. 899, 23 L. R. A. (N. S.) 834, and notes, 136 Am. St. Rep. 575, 19 Ann. Cas. 199; 19 Cyc. 1230, 1272; 13 Am. & Eng. Ency. Law (2d Ed.) p. 870, and notes. Nor does the contract between the parties as above set forth and the attempted compliance therewith on the part of appellant alter the case. The coffee was first sold direct to appellees by appellant, whereby it became the property of the former, and the fact that appellant's agents did thereafter assist appellees' drummers in making sales thereof to their customers within this state did not render it subject to the statute invoked by appellees.

In 19 Cyc. 1230, it is said:

"Sales of goods by a corporation situated without a state, to a resident of the state, even though made through traveling salesmen or agents sent into the state, to be shipped to him into the state, belong to the operations of interstate commerce, and are consequently not subject to a prohibition of the state Constitution or statute against foreign corporations doing business within the state without having an agent or place of business therein, or otherwise subject to prohibition or regulation by the state."

At page 1272, Id., subd. 6, it is said:

"Statutes of the kind under consideration have no application to the case where a corporation sends into the restricting state its traveling agent, who solicits orders for its goods and forwards them, subject to approval, to the home office, the orders being afterwards filled by shipments to the customer. Such an application of the statute would be inadmissible in so far as state statutes are concerned, because, so applied, it would have the effect of imposing a restraint upon commerce between the states or with foreign countries."

It is held in Miller v. Goodman, supra, by Chief Justice Brown, then Associate Justice, as shown by the syllabus, that it was not necessary for plaintiff, the assignee of a foreign corporation suing for the price of goods manufactured by it in another state, and sold through its agents in Texas, to allege or prove a compliance by the corporation with articles 745 and 746 of the Revised Statutes, requiring it to file its articles of incorporation with the secretary of state. Such business was interstate commerce, and the statute, as applied to it, was invalid.

A question somewhat similar to the one here involved has been recently fully considered by the Supreme Court of Oklahoma in Harrell v. Peters Co., supra, and many of the authorities bearing upon the subject have been cited, and some of them copiously quoted from, the holding in which is fully in accord with the views expressed herein. We conclude, therefore, that the court erred in holding that appellant was not entitled to recover; the justice of its claim being admitted by appellees.

[2] While the allegations of appellees' cross-action may not be as full as they perhaps should have been, still the court did not err in overruling appellant's exceptions thereto. It is true, as contended by appellant, that where a cause of action is founded on a certain demand, the defendant shall not be permitted to set off unliquidated or uncertain damages founded on a tort or breach of covenant on the part of plaintiff. See article 1329, Vernon's Sayles' Civ. Stats. 1914. While this is true, yet, if the counterclaim is founded on a cause of action arising out of or incident to or connected with the plaintiff's cause of action, then the foregoing article does not apply. See article 1330, Vernon's Sayles' Rev. Civ. Stat. In the present case it was pleaded and shown that appellant's cause of action sprung from and arose out of the contract between the parties covering both of the shipments in question. Therefore the counterclaim was predicated upon a cause of action arising out of and incident thereto, for which reason we overrule appellant's assignment complaining of this matter.

As to the third question, we sustain appellant's contention, and hold that the evidence is not sufficiently definite and satisfactory to sustain the judgment for the amount rendered.

For the reasons indicated, the judgment of the court below is reversed, and the cause remanded.

Reversed and remanded.