### JOHN A. DICKSON PUB. CO. v. BRYAN et al. (No. 900–4785.)

Commission of Appeals of Texas, Section B. May 9, 1928.

**1. Commerce ⬉40(2)—Corporations ⬉661 (6)—Sale and shipment of books by foreign corporation to soliciting agents in state held interstate transaction, not requiring permit to do business in state to sue for books.**

Sale by foreign corporation to soliciting agents in state and shipment of books to agents *held* to constitute interstate transaction, and not to require foreign corporation to prove permit to do business in state in order to maintain action to recover purchase price of books sold.

**2. Commerce ⬉8(12)—Shipment by foreign corporation into state on orders of soliciting agents held "interstate commerce" which Congress alone can regulate.**

Shipping merchandise from another state into state on orders of soliciting agent constitutes commerce between states which can only be regulated by Congress, and which Legislature is without power to bring within scope of state's statute requiring foreign corporation to obtain permit to do business in state in order to maintain suit for merchandise.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Interstate Commerce.]

**3. Commerce ⬉40(2)—Shipment by foreign corporation into state held interstate transaction, whether made to soliciting agents or purchasers on agents' orders.**

Shipment of books by foreign corporation into state, whether made to soliciting agents of foreign corporation or made to purchasers on orders sent in by soliciting agents, constituted transaction interstate commerce.

Error to Court of Civil Appeals of Tenth Supreme Judicial District.

Action by the John A. Dickson Publishing Company against W. P. Bryan and another. Judgment for defendants was affirmed by the Court of Civil Appeals (289 S. W. 1042), and plaintiff brings error. Reversed and remanded for another trial.

Barney A. Garrett, of Waco, for plaintiff in error.

Weatherby & Rogers and Bryan & Maxwell, all of Waco, for defendants in error.

LEDDY, J. Plaintiff in error, John A. Dickson Publishing Company, a foreign corporation, instituted this suit in the district court of McLennan county against defendants in error W. M. Arnold and W. P. Bryan to recover judgment on a bond or guaranty contract to secure the plaintiff in error for an account due it for Bibles sold and money advanced for expenses to one D. D. Dickson, who was alleged to be insolvent and a nonresident of Texas.

At the close of the evidence the trial court peremptorily instructed the jury to return a verdict in favor of defendants in error on the theory that it appeared from the evidence that plaintiff in error was doing business in Texas without a permit and therefore could not maintain the suit.

The Court of Civil Appeals (289 S. W. 1042) affirmed the judgment of the trial court, but on rehearing concluded that the trial court should have dismissed the case, and it thereupon reversed the judgment of the trial court and dismissed the case at the cost of plaintiff in error.

It was shown that on June 28, 1920, D. D. Dickson entered into an agreement with plaintiff in error whereby he was given the entire state of Texas in which to sell Bibles published by defendant in error, it agreeing to sell the Bibles at the prices stated in the contract. On July 15, 1920, defendants in error executed a bond or guaranty by which they agreed that in consideration of plaintiff in error shipping to the said Dickson such books as he might desire they would pay it therefor if payment was not made by Dickson within 40 days after same was due, and, also agreed to guarantee the repayment of any money that was furnished by plaintiff in error to Dickson for expenses, up to a maximum amount of $500, with reasonable attorney's fees in case suit was brought thereon. Plaintiff in error claimed a balance due it by Dickson of $1,001.58 and asserted a right of recovery against defendants in error for $500, plus $150 reasonable attorney's fees.

It was also shown that on September 4, 1920, plaintiff in error and Dickson made a supplemental contract and agreement, the pertinent portion thereof being as follows:

"Mr. D. D. Dickson: This is to notify you that supplementing contract entered into with you on June 24, 1920, we have appointed you general sales manager for the Texas department for the sale and distribution of the indexed Bible, and you are hereby authorized to appoint and train salesmen in the field work, contracts with such salesmen to be subject to the approval of the home office of the company. As full compensation to you for such services we agree to pay you on all sales made by us to your salesmen the following commissions: [Setting out the commissions to be paid.] Commissions to be computed on the retail price list and credits made to your account at the end of each month after collections have been received by us. As per your suggestion, we will allow you during our pleasure a drawing account of $600 per month, $300 on the 1st and $300 on the 15th of each month, you to send us entire proceeds of your individual sales, which sums we will credit first to your merchandise account, and the surplus against your drawing account."

The Honorable Court of Civil Appeals held that the above supplemental contract created an organization for the purpose of "solicit-

ing business in Texas," and that the sales made thereunder to such agents constituted a transaction of business in Texas, and for such reason it was not authorized to maintain this suit.

[1] We think the holding that sales shown to have been made under these contracts required plaintiff in error to allege and prove a permit to do business in Texas in order to maintain an action to recover the purchase price of its books sold to soliciting agents is in conflict with the decisions of the Supreme Court of the United States as well as the Supreme Court of this state.

[2] Shipping merchandise from another into this state upon orders of soliciting agents constitutes commerce between the states, and can only be regulated by Congress. The Legislature is without power to bring such transactions within the scope of our statute. Leisy v. Hardin, 135 U. S. 100, 10 S. Ct. 681, 34 L. Ed. 128; Robbins v. Taxing District of Shelby County, 120 U. S. 489, 7 S. Ct. 592, 30 L. Ed. 694; Miller v. Goodman, 91 Tex. 41, 40 S. W. 718; Smythe v. Fort Worth Glass & Sand Co., 105 Tex. 8, 142 S. W. 1157; McCaskey Cash Register Co. v. Mann (Tex. Civ. App.) 273 S. W. 1113.

In the case of Miller v. Goodman, cited above, the court had under consideration sales made by a foreign corporation under circumstances somewhat similar to those shown by this record. In determining that such sales constituted interstate commerce, the court used this language:

"Do the facts alleged show a transaction of the character of interstate commerce? We think that they clearly do. It is a case of sale, by a corporation created by another state of goods manufactured in that state and shipped into the state of Texas. It matters not whether the goods were sold before they were shipped, or shipped to the state and then sold. It is equally interstate commerce. Leisy v. Hardin, cited above. There is no material difference between the facts of this case and the cases of Asher v. The State of Texas [128 U. S. 129, 9 S. Ct. 1, 32 L. Ed. 368], and Robbins v. Shelby Co. Taxing District [120 U. S. 489, 7 S. Ct. 592, 30 L. Ed. 694], before cited. In each of these cases the agent was soliciting business and selling goods in the state where the law required the payment of a tax and procuring of license, and the Supreme Court of the United States, in each case, held that the business done was interstate commerce and not subject to regulation by the state."

[3] The fact that the books were shipped to the soliciting agents for delivery instead of to the purchaser direct does not have the effect of removing the interstate character of the transaction. It was so held in Caldwell v. North Carolina, 187 U. S. 622, 23 S. Ct. 229, 47 L. Ed. 336. In discussing such a situation, the court in that case said:

"Nor does the fact that these articles were not shipped separately and directly to each individual purchaser, but were sent to an agent of the vendor at Greensboro, who delivered them to the purchasers, deprive the transaction of its character as interstate commerce. It was only that the vendor used two instead of one agency in the delivery. * * * That the articles were sent as freight by rail and were received at the railroad station by an agent who delivered them to the respective purchasers, in no wise changes the character of the commerce as interstate."

Again, in Dozier v. Alabama, 218 U. S. 124, 30 S. Ct. 649, 54 L. Ed. 965, 28 L. R. A. (N. S.) 264, the same court in discussing a similar question said:

"No doubt it is true that the customer was not bound to take the frame unless he saw fit, and that the sale of it took place wholly within the state of Alabama, if a sale was made. But as was hinted in Rearick v. Pennsylvania, 203 U. S. 507, 512, what is commerce among the states is a question depending upon broader considerations than the existence of a technically binding contract, or the time and place where the title passed."

If the sales were made to Dickson's agents under orders made by them under the supplemental contract, or were made to purchasers on orders sent in by such agents, in either event the transaction would be one of interstate commerce.

Under the authorities cited, we conclude that plaintiff in error was not required to allege and prove a permit to do business in Texas in order to maintain this suit, because the sales made by it to Dickson and his agents showed a transaction of the character of interstate commerce, and that the trial court and the Court of Civil Appeals erred in not so holding.

It is therefore recommended that the judgments of the district court and the Court of Civil Appeals be reversed and the cause remanded for another trial.

CURETON, C. J. Judgments of the district court and Court of Civil Appeals both reversed, and cause remanded to the district court, as recommended by the Commission of Appeals.

We approve the holdings of the Commission of Appeals on the questions discussed in its opinion.